## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SCAN-SHIPPING, INC, <br><br>                Plaintiff, <br> v. <br><br> SOUTHWEST MARINE AND GENERAL INSURANCE COMPANY, AVALON RISK MANAGEMENT INSURANCE AGENCY, LLC D/B/A AVALON RISK MANAGEMENT, <br><br>                Defendants. | CIVIL ACTION No. <br><br> COMPLAINT |

Plaintiff, Scan-Shipping, Inc., having a place of business at 140 Smith Street, 4th Floor, Keasbey, NJ 08832 by way of complaint against the defendant(s), says:

### JURISDICTION AND VENUE

1. Subject matter jurisdiction herein is based on the Court's Maritime Jurisdiction, and particularly, Plaintiff seeks relief under the Shipping Act, 46 U.S.C. § 40101 to 40904, inclusive, with respect to Defendants' failure to pay upon a maritime bond upon which there was a duty to pay.

2. Further, pursuant to 28 USC § 1352, jurisdiction of this Court is laid for any bond executed upon on any law of the United States.

1

3. Personal jurisdiction is properly within the State of New Jersey because Defendant Southwest Marine and General Insurance Company ("Southwest Marine") is licensed by the Department of Banking and Insurance of the State of New Jersey to provide insurance services within the State and maintains a physical office for said purpose at 412 Mt. Kemble Avenue, Suite 300C, Morristown, NJ 07960.

4. Personal jurisdiction is properly held against Avalon Risk Management Insurance Agency, LLC d/b/a Avalon Risk Management ("Avalon") because its conduct, as described herein, in processing a bond claim as agent of Southwest Marine, occurred with respect to a bond claim arising within the State of New Jersey based upon, inter alia, a final judgment arising from the Superior Court of New Jersey.

5. Avalon is also authorized to do business in new Jersey as a foreign entity and has appointed an agent for service of process, thereby voluntarily submitting to the jurisdiction of this forum.

6. Venue is properly laid in New Jersey because Plaintiff and Defendant Southwest Marine are located within the State of New Jersey, Avalon is an agent of Southwest Marine, the underlying bond claim arose from a claim made within the State of New Jersey, and the final judgment upon which it was based was issued out of the Superior Court of New Jersey.

7. Further, and with respect to venue, the underlying Bill of Lading upon which gives rise to this dispute designates New Jersey as the choice of forum.

## THE PARTIES

1. Plaintiff is in the business of providing shipping, freight, and logistics services, and is a licensed by the Federal Maritime commission ("FMC") as a non-vessel operating common carrier ("NVOCC") and ocean freight forwarder ("OFF") by the Federal Maritime Commission.

2. Defendant Southwest Marine and General Insurance Company ("Southwest Marine") is an insurance company licensed by the Department of Banking and Insurance of the State of New Jersey to provide insurance services within the State and maintains a physical office for said purpose at 412 Mt. Kemble Avenue, Suite 300C, Morristown, NJ 07960.

3. Avalon Risk Management Insurance Agency, LLC d/b/a Avalon Risk Management ("Avalon") is, upon information and belief, a corporation organized and existing under the laws of the State of Connecticut, located at 150 Northwest Point Boulevard, Elk Grove Village, IL 60007, and authorized to do business in New Jersey.

4. Although not a party hereto, Nashrah is, upon information and belief, an entity organized and existing under the laws of Pakistan and authorized to

do business in the State of Texas, having a place of business at 10998 South Wilcrest Drive, Suite 279, Houston, TX 77099.

5.  Nashrah is the principal and Southwest Marine is the surety for the bond claim at issue in the captioned matter.

### THE GOVERNING LAW

6.  46 USC §40101 et. seq., commonly referred to as the Shipping Act, was enacted in 1984 and periodically amended thereafter.

7.  The shipping Act was intended to provide c

8.  46 USC §40102, part of the Shipping Act provides, as a definition relevant to these proceedings, that an ocean transport intermediary is defined as:

> **(20)**    Ocean transportation intermediary. The term "ocean transportation intermediary" means an ocean freight forwarder or a non-vessel-operating common carrier.

9.   46 USC § 40902 provides in pertinent part:

> **(a) In general.**   A person may not advertise, hold oneself out, or act as an ocean transportation intermediary unless the person furnishes a bond, proof of insurance, or other surety—
>
> **(1)**    in a form and amount determined by the Federal Maritime Commission to insure financial responsibility; and
>
> **(2)**  issued by a surety company found acceptable by the Secretary of the Treasury.

10.    46 USC §40102, part of the Shipping Act provides, as a definition relevant to these proceedings, that a non-vessel ocean common carrier is defined as:

(17)   Non-vessel-operating common carrier. The term "non-vessel-operating common carrier" means a common carrier that—

> (A) does not operate the vessels by which the ocean transportation is provided; and
> (B) is a shipper in its relationship with an ocean common carrier.

11.    46 USC §40102, part of the Shipping Act provides, as a definition relevant to these proceedings, that an ocean-freight forwarder is defined as:

> (19) Ocean freight forwarder. The term "ocean freight forwarder" means a person that—
>> (A)  in the United States, dispatches shipments from the United States via a common carrier and books or otherwise arranges space for those shipments on behalf of shippers; and
>> (B)  processes the documentation or performs related activities incident to those shipments.

12.    Thus, there are two types of OTI licenses, for which certain standard of financial stability and experience must be met before said licenses are granted.

13.    At all times relevant herein, both Plaintiff and Nashrah were each an ocean transport intermediary ("OTI") with Plaintiff having been licensed as *both* an NVOCC and OFF, and Nashrah being licensed as only an NVOCC.

14.    Pursuant to 46 USC § 40901, A person or entity in the United States may not act as an ocean transportation intermediary unless the person holds an ocean transportation intermediary's license issued by the Federal Maritime Commission.

15.   Pursuant to 46 USC § 40902, a bond is required to obtain a license.

16.   46 USC § 40902 provides for financial responsibility by the surety and

payment on the bond in relevant part as follows:

> **(b) Scope of financial responsibility.**   A bond, insurance, or other surety obtained under this section—
>
>> **(1)**   shall be available to pay any penalty assessed under section 41109 of this title [*46 USCS § 41109*] or any order for reparation issued under section 41305 of this title [*46 USCS § 41305*];
>> **(2)**   may be available to pay any claim against an ocean transportation intermediary arising from its transportation-related activities—
>>> **(A)**   with the consent of the insured ocean transportation intermediary and subject to review by the surety company; or
>>> **(B)**   when the claim is deemed valid by the surety company after the ocean transportation intermediary has failed to respond to adequate notice to address the validity of the claim; and
>> **(3)**   shall be available to pay any judgment for damages against an ocean transportation intermediary arising from its transportation-related activities, if the claimant has first attempted to resolve the claim under paragraph (2) and the claim has not been resolved within a reasonable period of time.
>
> **(c) Regulations on court judgments.**   The Commission shall prescribe regulations for the purpose of protecting the interests of claimants, ocean transportation intermediaries, and surety companies with respect to the process of pursuing claims against ocean transportation intermediary bonds, insurance, or sureties through court judgments. The regulations shall provide that a judgment for monetary damages may not be enforced except to the extent that the damages claimed arise from the transportation-

related activities of the insured ocean transportation intermediary,
as defined by the Commission.

17.   Thus, the only requirement under the statute is that the licensed and

bonded OTI be engaged in "transportation related activity".

18.   Further, although each type of OTI has a different regulatory definition,

there is no requirement under The Shipping Act that the conduct of a bonded

OTI be engaged in particular conduct, or not, other than it be, in the plain

language of the statute, "transportation-related activities."

19.   For the purposes of the bond statute, which type of transportation related

activities is irrelevant.

20.   As permitted by 46 USC § 40902, the FMC promulgated the rules

governing this process, the relevant portion of which is set forth at 46 CFR

515.23 as follows:

> **(a)** Who may seek payment. *Shippers, common carriers, and other
> affected persons* may seek payment from the bond, insurance, or
> other surety maintained by an *ocean transportation intermediary*
> for damages arising out of its *ocean transportation-related
> activities*. The Commission may also seek payment of civil penalties
> assessed under section 13 of the Shipping Act (*46 U.S.C. 41107-
> 41109*).
>
> **(b)** Payment pursuant to a claim. (1) If a person does not file a
> complaint with the Commission pursuant to section 11 of the
> Shipping Act (*46 U.S.C. 41301-41302, 41305-41307(a)*), but
> otherwise seeks to pursue a claim against an ocean transportation
> intermediary bond, insurance, or other surety for damages arising
> from its transportation-related activities, it shall attempt to resolve

its claim with the financial responsibility provider prior to seeking payment on any judgment for damages obtained. When a claimant seeks payment under this section, it simultaneously shall notify both the financial responsibility provider and the ocean transportation intermediary of the claim by mail or courier service. The bond, insurance, or other surety may be available to pay such claim if:

**(i)** The ocean transportation intermediary consents to payment, subject to review by the financial responsibility provider; or

**(ii)** The ocean transportation intermediary fails to respond within forty-five (45) days from the date of the notice of the claim to address the validity of the claim, and the financial responsibility provider deems the claim valid.

**(2)** If the parties fail to reach an agreement in accordance with paragraph (b)(1) of this section within *ninety (90) days* of the date of the initial notification of the claim, the bond, insurance, or other surety *shall be available to pay any final judgment* for reparations ordered by the Commission or *damages obtained from an appropriate court. The financial responsibility provider shall pay such judgment for damages only to the extent they arise from the transportation-related activities of the ocean transportation intermediary, ordinarily within thirty (30) days, without requiring further evidence related to the validity of the claim; it may, however, inquire into the extent to which the judgment for damages arises from the ocean transportation intermediary's transportation-related activities.* (emphasis added)

## THE BOND CLAIM AND PRIOR LITIGATION

21.   The undisputed record in this matter is that the judgment described herein relates to the shipment of cargo by ocean freight from the United States to the United Arab Emirates in December 2019.

22.   Nashrah is licensed by the FMC as an NVOCC, but not as an OFF. As such, it maintained an NVOCC bond but not an OFF bond.

23.   As such, it is, by definition an OTI required to have a bond as an NVOCC, which it did.

24.   On or about December 1, 2016, Southwest Marine issued a certain NVOCC bond, No. KMS52005, as surety, for Nashrah Shipping & Logistics, Ltd ("Nashrah"), as principal, pursuant to 46 U.S.C. § 40901-40904, as attachment for FMC Bond-48, which bond form is contained at 46 CFR Part 515, Appendix A ("the bond").

25.   The relevant part of Form 48 with governs this matter is as follows:

Whereas, this bond is written to ensure compliance by the Principal with section 19 of the Shipping Act (*46 U.S.C. 40901*-*40904*), and the rules and regulations of the Federal Maritime Commission relating to evidence of financial responsibility for OTIs (*46 CFR part 515*), this bond shall be available to pay any judgment obtained or any settlement made pursuant to a claim under *46 CFR 515.23* for damages against the Principal arising from the Principal's transportation-related activities under the Shipping Act, or order for reparations issued pursuant to section 11 of the Shipping Act (*46 U.S.C. 41301*-*41302*, *41305*-*41307(a)*), or any penalty assessed against the Principal pursuant to section 13 of the Shipping Act (*46 U.S.C. 41107*-*41109*).

 Now, Therefore, The condition of this obligation is that the penalty amount of this bond shall be available to pay any judgment or any settlement made pursuant to a claim under *46 CFR 515.23* for damages against the Principal arising from the Principal's transportation-related activities or order for reparations issued pursuant to section 11 of the Shipping Act (*46 U.S.C. 41301*-*41302*,

*41305*-*41307(a)*), or any penalty assessed against the Principal pursuant to section 13 of the Shipping Act (*46 U.S.C. 41107*-*41109*).

This bond shall inure to the benefit of any and all persons who have obtained a judgment or a settlement made pursuant to a claim under *46 CFR § 515.23* for damages against the Principal arising from its transportation-related activities or order of reparation issued pursuant to section 11 of the Shipping Act (*46 U.S.C. 41301*-*41302*, *41305*-*41307(a)*), and to the benefit of the Federal Maritime Commission for any penalty assessed against the Principal pursuant to section 13 of the Shipping Act (*46 U.S.C. 41107*-*41109*).

26.   At all times relevant hereto, the NVOCC bond was, and remains, in full force and effect.

27.   At all times relevant hereto, Avalon was designated by Southwest Marine as its agent for processing claims made under the above referenced bond.

28.   In December 2019, Nashrah nominated four cargo containers worth of goods, and caused the same to be shipped by ocean freight from the United States to the United Arab Emirates.

29.   Nashrah partially paid for the cost of the freight.

30.   Upon the arrival of the cargo in UAE, it was not timely claimed, and it accrued demurrage, detention and related port charges.

31.   Nashrah unsuccessfully undertook to cause the cargo to clear customs, and it ultimately had to be abandoned.

32.   By the time the cargo was abandoned, it had accrued significant additional charges in accordance with the Bill of Lading issued by Plaintiff, including, without limitation, demurrage, detention and destruction charges, as well as attorney's fees.

33.   While the aforesaid process was ongoing, and before the final tally of damages was known, and on or about June 16, 2020, Plaintiff made a claim as against the bond by submitting a form entitled "OTI Bond Claim Form" to Avalon, Southwest Marine's designated claims agent.

34.   At the time of this initial claim, fees and charges were still accruing.

35.   Although the statutes and regulations have no such requirement, Avalon, as Southwest Marine's agent, refused to pay the bond claim unless and until Plaintiff procured a judgment against Nashrah.

36.   On April 1, 2021, Plaintiff obtained a final judgment in the amount of $137,965.99, as against Southwest Marine's principal, Nashrah, for its transportation related activities under the Shipping Act, in the matter styled "Scan-Shipping, Inc. v. Nashrah Shipping & Logistics, Ltd." and bearing docket number MID-L-6753-20.

37.   The matter was fully contested by Nashrah, which was represented by Counsel in the action.

38.   Judgment was granted on a motion for summary judgment and was based upon a documentary record that showed, inter alia, Nashrah's conduct in nominating and partially paying for the ocean cargo in question.

39.   The Court's Order granting Summary Judgment determined that Nashrah was the party that requested the shipping services, promised payment, and in fact made partial payment to Plaintiff.

40.   The Court, upon reviewing the undisputed facts, and applying the contractual provisions of the Bill of Lading for the ocean freight, found Nashrah contractually liable as a "merchant" under the language contained therein.

41.   In accordance with New Jersey Law, the judgment became final when entered upon the docket of the clerk of the Court on April 1, 2021.

42.   The judgment described above is entitled to full faith and credit determining Nashrah responsible for ocean transportation related services, costs and expenses as described above.

43.   As a licensed and bonded OTI, the bond amount should have been paid over in partial satisfaction of the judgment upon its receipt by Avalon.

44.   As of the date of this pleading, none of the judgment has been paid.

45.   The full amount of $137,965.99 remains due, owing and unpaid.

46.    On April 1, 2021, the same day the judgment, Plaintiff notified Avalon of its amened claim in the amount of the judgment.

47.    Avalon initially indicated it was attempting to get Nashrah to pay the judgment.

48.    Nashrah then took the position, through its counsel located in California, who was not admitted in New Jersey, that the judgment was not "final", as by then a motion for reconsideration had been filed.

49.    Such a motion does not defeat the finality of a judgment and does not in fact prevent a judgment from being levied upon.

50.    In fact, the Clerk of the Superior Court issued a writ of execution against Nashrah with respect to said judgment.

51.    The motion for reconsideration was denied, by Order of June 11, 2021. In addition to confirming the April 1, 2021, judgment, the Court found that the new documents submitted on reconsideration also conferred liability to Nashrah as the shipper's agent.

52.    The Court also determined that the Certification submitted on reconsideration by Ali Abbas, the principal of Nashrah was entirely inconsistent with his prior certification, *thereby confirming that he was not telling the truth on one (or possibly both) of the motions*.

53.     Neither the April 1, 2021 Judgment, nor the June 11, 2021 Order denying reconsideration, was appealed, and the time in which to file an appeal thereon has now expired.

54.     Avalon failed to settle or resolve the bond within 90 days of notification of judgment (July 1, 2021) as required by 46 USC § 40902 and 46 CFR 515.23.

55.     As a result, the mandatory requirement of 46 CFR 515.23 to pay the claim within 30 days therein was triggered.

56.     Avalon also failed to timely pay the claim within the 30-day payment period.

57.     Avalon also failed and refused to adjudicate the bond claim on its merits, or otherwise negotiate in good faith thereon, in the fist 90-day period as required by regulation, or event during the next 30 day mandatory payment period, also required by regulation.

58.     The 120th day, August 1, 2021 came and went without payment or other substantive response from Avalon as to when and if it would pay the bond claim.

59.     As this point in time, Avalon was far beyond the point in time, under the statutes and regulations, that it could reject the claim on its merits, if said merits had existed, which it didn't.

14

60.    On August 12, 2021, when it was already in default of its bond payment requirement, based upon the aforesaid statute and regulation, and well past the negotiation period, Avalon, through its California counsel who was not admitted in New Jersey, declared that Avalon would not pay the bond claim.

61.    In addition to the fact that the time in which to settle, object and pay the bond claim has expired pursuant to 46 CFR 515.23, which is in itself a basis to grant declaratory judgment to Plaintiff, Avalon also wrongfully sought to rewrite the statutory standard to graft onto it language that doesn't exist and is different that Congress intended when it passed the bond statute, different when the FMC intended when it promulgated the rules, and different than the plain language of Bond Form 48, which applies in this case.

62.    The bond form issued by Southwest Marine requires it to pay under the following terms and conditions:

> Now, Therefore, The condition of this obligation is that the penalty amount of this bond shall be available to pay any judgment or any settlement made pursuant to a claim under *46 CFR 515.23* for damages against the Principal arising from the Principal's transportation-related activities

63.    As a preliminary matter, Nashrah is not licensed as an OFF, but rather only as an NVOCC.

64.    Further, Avalon asserted, incorrectly from a factual standpoint, that it did not have to pay the claim because Nashrah was acting as an OFF and not an

15

NVOCC for the transaction at hand, and the bond only applied to NVOCC conduct.

65.    In fact, both conclusions were incorrect, and were asserted as a false and fraudulent basis to deny the claim.

66.    Even if the distinction mattered, which it does not, Nashrah was acting as an NVOCC and not a freight forwarder. The flow of money from Nashrah to plaintiff for the services confirms this in accordance with 46 CFR 515.2 (k).

67.    Had Nashrah actually been acting unlawfully as OFF, the flow of money would have been in the opposite direction. See 46 CFR 515.2 (f) and 46 USC §40904(a).

68.    Thus, Avalon asserted that Nashrah, Southwest Marine's principal, was acting unlawfully as a basis to refuse to pay the bond.

69.    As the judgment confirms that Nashrah paid Plaintiff, as merchant and shipper's agent, and not the other way around on the underlying services, the Judgment confirms Nashrah performed an essential task performed by an NVOCC.

70.    Simply, when Nashrah's conduct is examined under the regulatory definitions, it meets the NVOCC definition and does not meet the OFF definition.

71.    However, had Nashrah been acting unlawfully, such legal violation would inure liability to the surety, i.e. Southwest Marine, not plaintiff as a claimant.

72. The entire statutory and regulatory scheme is designed to protect parties in Plaintiff's position, not Avalon and Southwest Marine.

73.    Further, the statute makes no distinction as between NVOCC activities and OFF activities, but rather requires only that they be related ocean transport related activities.

74.    Accordingly, Avalon was attempting to improperly rewrite the statute.

75.    Ironically, Avalon effectively declared Nashrah to have been engaged in ocean transport related activities by its factually wrongful determination Avalon was was acting as an OFF, thereby conferring and confirming liability for ocean transport related activity under the statutory and regulatory scheme cited above.

76.    Further, Avalon continued to express the judicially rejected opinion of Nashrah's principal that Nashrah was not responsible for the underlying debt, and that somehow, that opinion absolved Sothern Marine/Avalon from payment of the judgment.

77.    This process engaged in by Avalon, and its ultimate conclusion is, of course, expressly in contravention with 46 CFR 515.23, which precludes requiring additional information *except for confirmation that the judgment*

*was related to ocean transport related activities*, a fact that has not been disputed.

78.     Despite a Court having reviewed and rejected Nashrah's argument-twice-based on the underlying Bill of Lading, and a judgment obtained in Plaintiff's favor, Avalon was attempting to supplant its own judgment that it did not have to honor the judgment based on the opinion of Nashrah's principal. This is exactly the opposite of Avalon's and Southwest Marine's duties.

79.     Had Nashrah actually been acting as an OFF, which is denied,  (and had it been licensed to do so), Nashrah would have been entitled to receive payment from an NVOCC for such services, which it did not. Simply, the money would have flowed in the opposite direction than observed in the case and judgment.

80.     Essentially, Avalon attempted to make a distinction as between the two types of OTI's, not relevant to determination as to whether payment on a bond is required, without even understanding the definitional difference between them.

81.     It also failed to understand or acknowledge the underlying facts of the case and the application of bond law to the findings of fact and conclusions of law in the April 1, 2021 Judgment.

82.     Simply, Avalon was wrong on both the facts and the law, and wrongfully denied the claim on behalf of Southwest Marine.

## FIRST COUNT

83.     Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 82 of the Complaint as if set forth at length herein, and hereby incorporate the same by reference.

84.     Plaintiff's judgment is final, irrevocable and entitled to full faith and credit, as dictated by Art. 4, § 1 of the United States Constitution confirming that Nashrah owes Plaintiff $137,965.99 for ocean transportation related activities.

85.     Avalon is the agent for processing of claims for Southwest Marine.

86.     Southwest Marine is the surety for Nashrah as principal on a certain maritime bond in the face amount of $75,000.00 posted for the benefit of those parties, such as Plaintiff, that engage in ocean transportation related activities as governed by the statutes and regulations identified herein.

87.     Plaintiff is further entitled to full and credit on the Order denying reconsideration dated June 11, 2021 denial of reconsideration which expressly confirms the ocean transportation related activities were the factual predicate for the judgment.

88.     A claim was duly made to Avalon as claims agent for Southwest Marine using the form and manner directed by Avalon for such claims against the bond.

89.     Avalon, as agent for Southwest Marine, has independently confirmed that the underlying conduct to the judgment relates to ocean transportation related activities, making it a proper judgment for payment under the bond.

90.     The time in which to settle or pay on the bond has expired with Avalon refusing to pay on behalf of Southwest Marine without lawful judgment or excuse.

91.     Avalon, as agent for and on behalf of Southwest marine, has unduly refused to make payment on the bond claim in violation of statute and regulation.

92.     Said refusal was made in bad faith, and is entitled to all penalties permitted under law, including without limitation, attorneys' fees, and possibly other damages, for failing to pay on the bond as and when due.

93.     Plaintiff is entitled to declaratory judgment, pursuant to 28 USC § 2201 declaring Southwest Marine liable under the maritime bond issued to Nashrah and described herein up to the full amount of the bond.

94.    As a direct and proximate result thereof, and but for the conduct of Southwest Marine, and its claims agent Avalon, Plaintiff has been and continues to be profoundly damaged.

## SECOND COUNT

95.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 94 of the Complaint as if set forth at length herein, and hereby incorporate the same by reference.

96.    Plaintiff is an intended third-party of the bond contract as between Southwest Marine and Nashrah.

97.    This intended third-party beneficiary relationship is determined not only by the language of Bond Form 48, but also by the statutes and regulations requiring Nashrah, as an NVOCC, to maintain a bond for the benefit of those parties with whom it engages in ocean transportation activities.

98.    By failing to pay a valid claim for reimbursement for a judgment related to Nashrah's ocean transportation activities, Southwest Marine has breached its contractual duty on the bond to pay such intended third-party beneficiaries, of which Plaintiff is one.

99.    But for the improper conduct of Avalon, as agent of Southwest Marine, and Southwest Marine, in breaching the obligation to pay on the bond to an

intended third-party beneficiary, Plaintiff would have received the full amount of the bond of $75,000.00 upon making the claim.

100. The time in which to object to said claim has expired and Southwest Marine is now obligated by law to pay the full amount of the bond, $75,000.00, to plaintiff, plus attorney's fees and such other fees and costs as the Court deems just and equitable.

101. Southwest Marine has failed and refused to do so without lawful justification or excuse and has breached its duty to Plaintiff as an intended third-party beneficiary of the maritime bond at issue herein.

102. But for said improper conduct, Plaintiff would not have been damaged.

103. As a direct and proximate result thereof, Plaintiff has been and continues to be profoundly damaged.

## THIRD COUNT

104. Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 103 of the Complaint as if set forth at length herein, and hereby incorporate the same by reference.

105. Plaintiff is an intended third-party of the bond contract as between Southwest Marine and Nashrah.

106. This intended third-party beneficiary relationship is determined not only by the language of Bond Form 48, but also by the statutes and regulations

requiring Nashrah, as an NVOCC, to maintain a bond for the benefit of those parties with whom it engages in ocean transportation activities.

107.  Avalon is the claims agent for Southwest marine with respect to its maritime bond claims.

108.  Avalon is, inter alia, required to approve all claims submitted as against Nashrah's bonds that conform to law as described above.

109.  Avalon has, without lawful justification and excuse, refused to follow the law governing maritime bonds in processing Plaintiff's claim against Nashrah's bond.

110.  By directing Southwest Marine to fail to pay a bond claim required by law to be paid, Avalon has interfered with the expected contractual rights, as dictated by statute and regulation, by preventing Southwest Marine from timely paying the bond issued under Bond Form 48 for Nashrah's ocean transportation activities to Plaintiff.

111.  But for the improper conduct of Avalon, as agent of Southwest Marine, and Southwest Marine, in interfering with Southwest Marine's obligation to pay on the maritime bond, Plaintiff would have received the full amount of the bond of $75,000.00 upon making the claim.

112.  As a direct and proximate result thereof, Plaintiff has been and continues to be profoundly damaged by the conduct of Avalon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A) As and for the First Count, for a judgment declaring Southwest Marine responsible to pay Plaintiff the full amount of Nashrah's maritime bond.

B) As and for the Second Count, for a judgment against Southwest Marine for breach of contract to Plaintiff as an intended third-party beneficiary of Bond Form 48, for the full amount of Nashrah's maritime bond.

C) As and for the Third Count, for a judgment against Avalon for interference with the contractual rights of Plaintiff as the intended third-party beneficiary of Bond Form 48, for the full amount of Nashrah's maritime bond.

D) For Compensatory, Consequential and Punitive Damages against Defendants commensurate with the causes of action described herein.

E) For Interest on the unpaid amount due;

F) For Attorney's fees;

G) For Costs of Suit; and

H) For such other and further relief as the Court deems just and equitable.